COURSON v. O'CONNOR et al.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2210.

1. PATENTS ⬡⟶83—PRIORITY OF RIGHT BETWEEN INVENTORS—DILIGENCE IN MAKING APPLICATION.

An inventor *held* to have exercised due diligence in applying for a patent, although three months elapsed after he perfected his invention before he verified his application, where he went within a week to employ a solicitor, and the subsequent delay was caused by absences of the solicitor, to the facts that he was very busy, and that the inventor held a responsible position in charge of many men, and could attend to the matter only outside of working hours, and to the time required to prepare the drawings.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 108, 109; Dec. Dig. ⬡⟶83.]

2. PATENTS ⬡⟶83—PRIVITY OF RIGHT BETWEEN INVENTORS—DILIGENCE IN MAKING APPLICATION.

In considering the question of diligence in applying for a patent after the invention is perfected, the circumstances surrounding the inventor must be taken into account. Reasonable diligence does not require him to devote his entire time thereto, nor to abandon his ordinary means of livelihood, nor can he be held accountable for the usual delays incident

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the business of a busy solicitor, nor even to the latter's unusual delays, not amounting to actual negligence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 108, 109; Dec. Dig. ☞83.]

3. PATENTS ☞114—SUIT IN EQUITY TO OBTAIN PATENT—PROOF OF DILIGENCE.
In a suit under Rev. St. § 4915 (Comp. St. 1913, § 9460), to obtain the issuance of a patent, complainant does not have the burden to establish his diligence beyond any doubt to overthrow an adverse finding by the Patent Office, where such finding was expressly based on the complete absence of evidence on the subject.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. ☞114.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Ferdinand A. Geiger, Judge.

Suit in equity by John F. Courson against Martin A. O'Connor, W. H. Miner, and the W. H. Miner Company, Incorporated. Decree for defendants, and complainant appeals. Reversed.

Charles M. Clarke, of Pittsburgh, Pa., and Otto R. Barnett, of Chicago, Ill., for appellant.

George I. Haight, of Chicago, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. This is a proceeding under R. S. § 4915 (Comp. St. 1913, § 9460), to determine priority of invention of a friction draft gear for railway cars. The case is free of the complications ordinarily attending such an inquiry. No question of priority of conception, knowledge of one another's activities, or estoppel is involved. Courson conceived his invention in 1898; O'Connor 10 years later, in November, 1908. During this period, Courson experimented and tested his invention some eight or nine times; the final test was on October 17, 1908. O'Connor's application was filed on February 4, 1909; Courson's on February 8, 1909. In view of this earlier constructive reduction to practice by O'Connor, the burden was on Courson, after proving his priority of conception, to establish either an earlier actual reduction to practice or diligence from the time O'Connor entered the field down to the date of filing his application.

In all of the stages of the interference proceeding through the Patent Office and the Court of Appeals of the District of Columbia, as well as in this case in the District Court, it has been held that Courson failed to exercise the requisite diligence, and that none of his tests amounted to a reduction to practice. The finding of the Examiner of Interferences that diligence was excused was not concurred in by the other tribunals. In view of the conclusions reached by us on the other phase of this case, it is unnecessary to determine whether the District Court gave due weight to the additional evidence introduced in this proceeding in reference to the October, 1908, occurrences as establishing reduction to practice.

That Courson was fully satisfied with the October, 1908, tests as demonstrating the practicability of his invention and the advisability

of now applying for a patent is amply proven. It is clear, too, that whatever the correct legal conclusion may be, he fully believed that he had thereby actually reduced his conception to practice. Upon this he relied in the interference proceedings, and therefore offered no evidence other than the date of completion of the patent drawings, January, 1909, and the execution of the application, January 19, 1909, to explain the delay in filing the application or to establish diligence. The opinions rendered clearly show that it was this complete absence of evidence on this point that led to the conclusion of lack of diligence. The Examiners in Chief stated:

"We think that his test of October, 1908, may be taken as proof of diligence on his part just prior to the conception of O'Connor, but from the time of the October test, which is understood to have taken place on the 17th of that month, until Courson's filing date, on February 8, 1909, there is absolutely no testimony to show that he did anything whatsoever toward reducing his invention to practice, or as to what steps, if any, he took toward the preparation of his application for patent. However, the Courson application was executed on the 19th of January, 1908, a fact of which we may take notice, and which is in itself evidence bearing on the question of his diligence. However, between the date, October 17, 1908, when the last test was conducted and the 19th of January, 1909, when the oath of the first application was executed, a period slightly over three months intervened, during which time, in the absence of proof to the contrary, it must be assumed that Courson was not exercising any degree of diligence. During that time, also, O'Connor entered the field and set about reducing the invention to practice. The question which, therefore, presents itself for determination is whether or not an unbroken period of three months' inactivity is such a length of time as will defeat a claim of due diligence. We believe that this question must be answered in the affirmative. * * * Nothing can be said of the character and reasonableness of the inventor's testimony and that of his witnesses as to what was transpiring during the three months' period when Courson should have been diligent for as before stated the testimony is silent as to occurrences of that period."

The Commissioner of Patents says:

"There is absolutely no testimony that he did anything between the date of the last test, October 17, 1908, and the date upon which his application No. 476,588 was filed, February 8, 1909. * * * The only question which therefore remains to be considered is whether the unbroken period of three months' inactivity on the part of Courson was such as to subordinate his right to the patent to his opponent who, in the meantime, conceived and reduced the invention to practice. * * * No sufficient reason is shown why he could not have filed an application for a patent upon the devices covered by these applications or any of those in which he embodied his invention at any time, either previous to or during the period which intervened between October, 1908, and February, 1909."

The Court of Appeals held (38 App. D. C. 484):

"A more difficult proposition is presented on the subject of diligence. * * * It appears that the last test made by Courson was on October 17, 1908, which it may be conceded shows diligence on his part just prior to the entry of O'Connor into the field, but his activity seems to have ceased at that point. Nothing further was done until the 19th of January following, when the oath to his application was made. Almost a month then elapsed before the application was filed in the Patent Office."

A suit under section 4915, unlike the hearing in the Court of Appeals of the District of Columbia, is not an appeal, and thus a continuation of the patent proceedings. It is an original, independent action,

in which all of the questions are tried de novo.   An opportunity is thus afforded to introduce additional testimony bearing on the matters theretofore considered as well as evidence to establish other bases for and defenses to the grant of priority.   And in this case Courson for the first time offered considerable evidence specifically in support of his claim that he had exercised reasonable and proper diligence after the October, 1908, test down to the date of the execution of the application, January 19, 1909, and some evidence in explanation of the delay of not "almost a month," but only 17 days, in filing it.   His own testimony was fully corroborated by other witnesses and stands uncontradicted on the record.

The District Court was not, and we are not, called upon to balance the evidence offered in the interference proceedings, either alone or as supplemented by that adduced in this case, for, as the Patent Office tribunals correctly state, no evidence of diligence was before them.

[1]  The sole question is whether the evidence now offered for the first time establishes diligence; if it does, then the decision against Courson's priority of invention based on a total absence of such evidence cannot be sustained.   In our judgment, reasonable diligence from the time of the entry of O'Connor into the field in November, 1908, and this concededly is the only period involved, is fully established.

Courson had theretofore secured his patents through Washington, D. C., attorneys.   He had but recently learned that the rights reserved by him on the assignment of another patent drawn by these attorneys were not what he desired and expected.   He attributed his loss, not to lack of skill of these attorneys, but to his inability to confer with them personally.   Believing his present invention, as shown by the October, 1908, test, to be the best of many things done by him in the field of draft gears, he was desirous of securing the aid of a patent attorney equal in ability to his former solicitors, but residing in Pittsburg, 15 miles from Pitcairn, his home.   Within a week after the October test, he called on his lawyer and friend, J. C. Gray, to recommend some one.   Gray was not in.   Courson called on him again the next time he was in Pittsburg, the first part of November.   While Gray mentioned Charles M. Clarke, he stated that he wanted to consider the matter carefully, and asked Courson to come in again. Courson called several times, but Gray was out.   Finally Courson decided to turn the matter over to his Washington solicitors, and on December 4th prepared a letter for them.   On December 7th, he had occasion to be in Gray's office on another matter, and Gray again unsuccessfully tried to reach Clarke.   A few days later, however, Courson and Gray saw Clarke and retained him.

Treub, one of the Pennsylvania Company's draftsmen at Pitcairn, had made the preliminary drawings.   Because he could talk matters over with him at all times, and because Clarke's draftsman was very busy at that time, Courson had him prepare the final Patent Office drawings.   These took some time, as Treub had never before prepared a standard Patent Office drawing, and as he could devote only his extra hours to the work.   He found difficulties in drawing the

perspectives as desired, and had to go to Clarke's office for consultations in reference thereto. With Courson, he conferred daily.

But he began the work immediately after Clarke was retained. One sheet was finished before Christmas; the other early in January. At the end of the first or beginning of the second week of January, Courson took them to Clarke, who stated that he would have the papers ready in a week. Courson telephoned him several times, and when they were ready came in and executed them on January 19, 1909. Clarke was very busy at the time. The draft gear business was practically new to him. He desired time to go over the documents carefully, to be sure they were right before sending them to Washington. Courson called on him shortly thereafter, but Clarke had not yet gone over the papers. They were sent, however, before the next visit.

[2] In considering the question of diligence, the circumstances surrounding the inventor must be taken into account. Courson was at the head of a large and important shop, in charge of nearly 3,000 men. His time was not his own. Unless he gave up his position, he could ordinarily devote only his own, not his employer's, time to his inventions. He could go to Pittsburg, not when he desired, but when the work at the shop made it convenient.

The exercise of reasonable diligence in preparing and filing his application does not require an inventor to devote his entire time thereto, or to abandon his ordinary means of livelihood. He cannot be held accountable for the usual delays incident to the services of a busy patent solicitor, or even for the latter's unusual delays not amounting to actual negligence. The law does not require him to employ an experienced patent draftsman in lieu of one thoroughly competent, but unable, because of other work and inexperience, to get the matter done with exceeding promptness.

If Courson was to retain his important and highly responsible position with the railroad, he was necessarily compelled to make the perfecting of his invention and the preparation for his patent subordinate to his other pressing daily activities. But we cannot agree with the learned trial judge that even if, under the foregoing facts, the conclusion were justified that the invention received only such attention as Courson was able to give to it after the full discharge of his immediate obligations to his employer, a lack of reasonable diligence is to be charged against him.

[3] Nor can we concur in his opinion that in a case like this, where the entire testimony bearing on the question is presented for the first time in the District Court, the burden is on the plaintiff to establish diligence beyond any doubt, in order to overthrow the adverse finding of a lack of diligence, expressly based by the Patent Office tribunals on the complete absence of evidence on the subject. In this vital respect the case differs from Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, in which no new evidence whatever was offered.

The decree must be reversed, and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.