## LINDSEY v. BERGNER.

(Court of Appeals of District of Columbia. Submitted May 13, 1925. Decided June 1, 1925. Motion for Rehearing Denied June 19, 1925.)

No. 1752.

Patents ⬦═91(4)—Evidence held to establish priority in invention of automatic doughnut frying device.

Evidence *held* to establish priority in invention of automatic device for frying doughnuts.

Appeal from Commissioner of Patents.

Interference proceeding between Ernest L. Lindsey and John C. Bergner. From the judgment awarding priority to Bergner, Lindsey appeals. Reversed.

H. F. Riley, of Washington, D. C., and W. S. Graham, of San Francisco, Cal., for appellant.

F. B. Fox, of Philadelphia, Pa., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from the decision of an Assistant Commissioner of Patents in an interference proceeding, awarding priority to the party Bergner; the Examiner of Interferences and the Board of Examiners in Chief having awarded priority to the party Lindsey

The invention is an appliance for frying doughnuts, consisting of a shallow pan containing a spiral channel. This pan is supplied with oil heated to the proper temperature. The raw doughnut is placed in the center of the pan, quickly comes to the surface, and is carried by the current through the spiral channel to the outside of the pan. At a predetermined point it is turned, that it may be fried on the other side. The operation is so timed that the doughnut is supposed to be completely cooked when it reaches the outside of the pan, at which point there is an ejector device. As long, therefore, as uncooked doughnuts are supplied at the center and the machine properly functions, the process will be continuous.

It appears from the testimony that it was the intent of each party to develop a window display machine. The issue is expressed in three counts, of which the first, here reproduced, is sufficiently illustrative:

"1. In apparatus for cooking free articles in hot fluid the combination of a receptacle for the fluid, and means for circulating the fluid and for progressing the articles over a gyratory course in the receptacle, under propulsion by the fluid, including a guide extending spirally outward from the center of the receptacle to its periphery."

Bergner's application was filed July 10, 1919, and Lindsey's on October 7, 1919. Bergner is a draftsman and specification writer in a patent law office, and, so far as this record discloses, has no practical knowledge of the art. He conceived the invention May 6, 1919, and soon thereafter prepared drawings and filed his application. The record does not disclose that he ever marketed a machine.

Lindsey was thoroughly skilled in this field, having been engaged in the manufacture and sale of window display devices in the bakery art. We will here briefly review the evidence introduced in support of his case:

A Mr. Patrick J. Shortt, an expert baker, testified that shortly before Christmas of 1918, in a conversation he had with him, Mr. Lindsey told him "he had an idea of an automatic doughnut machine, and he asked me questions * * * pertaining to the manufacture of doughnuts. After he elicited the information, he said the reason he asked the information was because he had an idea of a doughnut machine, where the doughnuts were carried in a current of fat; around through the grease, and were carried automatically to the delivery." In cross-examination this witness was asked what he knew about doughnuts, and replied: "What did I know about cooking doughnuts? I spent 25 years—or 20 years or 23 years at that time—in the manufacturing of doughnuts and all lines of bakery goods."

Mr. Daniel Beck, a graduate of Cornell with an A. M. E. degree, had known Mr. Lindsey since the fall of 1914. He was shown a drawing of the Lindsey application, and asked whether he ever discussed such a machine with Lindsey. He replied that he had in the early part of April, 1919. He had been told that Lindsey was at work on such a machine, and said to him, "I hear you have a doughnut machine in mind," and Lindsey "said, 'Yes,' and he immediately began to tell me some of the details." The witness was then asked to describe the details, and replied: "As near as I remember, he said that the doughnuts were to be formed in a hopper or depositor of some sort, and were to be deposited in a hot stream of oil. This oil was to be maintained in a channel, the oil to be, of course, started at the source, and was to be returned to the source; he did not say by a pump, but I imagine there was to be a pumping proposition, and some time during the course of the stream of oil the doughnut was to be automatically turned, so it would fry on the other side; as to the exact details he did not go into those. * * * At the end of the channel the doughnut was to be taken from the oil by some kind of a conveyor." When asked how he fixed the date of the discussion, witness said: "I went to Chicago about the latter part of April, I think it was the 26th of April, and it was before I left for Chicago; if I remember distinctly, it was several weeks before I left." The cross-examination of this witness strengthened rather than weakened his testimony.

Mr. C. F. Switzer, who at the time of the occurrences about which he testified was

sales manager for the Johns-Manville Company, located across the street from the shop in which the Lindsey experiments were being conducted, testified that he had access to this shop, as he sold materials to Mr. Lindsey's company, and in April of 1919 saw "this spiral pan arrangement," and later "saw one of the gem machines in there [the shop]. And from time to time I used to try some of the Bake-Rite doughnuts that had been made in there." It may be noted here that Mr. Lindsey was president of the Bake-Rite Oven Manufacturing Company.

Mr. J. Sank had been intimately acquainted with Mr. Lindsey since 1915, through association with him in various projects, but when he testified was not connected with Mr. Lindsey or his company in any way. This witness testified that he served in the Army and was located at Angel Island from the 3d of October to the 11th of December, 1918, and during that time, while on leave, he visited Mr. Lindsey at his place of business. He was shown a copy of the Lindsey drawing, and asked whether he recognized what it indicated. Answering in the affirmative, he then was asked, "What is it?" He replied, "That is a cooker; this is his doughnut machine." He then was asked whether he had discussed it with Mr. Lindsey, and answered, "Yes; lots of times;" that the first time was while he was in the Army, and that the conversation occurred in Lindsey's office. Asked to state the circumstances of the conversation, witness said: "Well, he drew on the back of an envelope a spiral, and told me that that was a cooker for his doughnut machine, and the doughnuts were to be dropped in the center of it, and at some point they were to be turned over and removed from the oil."

Witness further stated that he was employed by the Bake-Rite Company from about March 1, 1919, until Christmas of that year, with the exception of a few weeks in August, and that he did shop work on Lindsey's doughnut machine. On cross-examination he was asked what he meant by "doughnut machine," and replied: "Why, Mr. Lindsey's doughnut machine, this machine—this one—that this is a part of a drawing of." In answer to the question, "When you say 'this one, that this is a part of a drawing of,' what do you refer to?" witness answered, "I mean—there is still a cutter that belongs to that machine that is not shown in the drawing." (The "cutter" is not one of the elements of the counts here.) Asked how long he worked on this machine at the Bake-Rite shop, witness replied that some-

times he worked on it for three or four days at a time, and then again for one day or less. In response to a question as to whether he recalled any date when he saw the machine cook doughnuts, witness stated, "Well, in the summer of 1919—maybe it was before August or after August, I cannot say;" that the cooking was done in the shop of the Bake-Rite factory.

Mr. S. A. Kitchener, an officer of the Bake-Rite Company, testified in considerable detail as to disclosures of the invention made to him by Lindsey in December of 1918, and as to the subsequent development of the invention. Mr. Lindsey, in his testimony, stated in detail his activities in developing this invention.

All this testimony is reasonable and consistent, and bears all the earmarks of verity. As we perceive no ground for discrediting either Mr. Lindsey or his witnesses, we must find, as did the Examiner of Interferences and the Board of Examiners in Chief, that Lindsey had conceived this invention long before Bergner's entry into the field, and that Lindsey was reasonably diligent early in May of 1919, when Bergner's activities commenced. Lindsey undoubtedly had practically perfected a machine embodying the counts of this issue prior to Bergner's entry into the field, and therefore might have applied for a patent thereon; but such a machine was not considered practical by either party. What each desired was a complete machine, including a depositor. As soon as this was constructed, and the efficiency of the machine demonstrated, the application was filed. Indeed, instructions to file were given some time in advance of the actual filing date, which, as we have seen, was less than three months later than the filing date of Bergner.

Lindsey's witnesses were practical men, and their testimony leaves no room for doubt that they not only understood the disclosures made to them, but that they were familiar with the development of Lindsey's early conception. In such a situation, the prior inventor should not be deprived of the fruits of his invention, unless chargeable with unreasonable delay in perfecting it, which is not the case here. That the Assistant Commissioner entertained some doubt as to the equity of his decision is apparent, for he says: "It is regrettable that one who first began to produce a valuable invention should fail to secure the benefits of his labor, but it is impossible to make a clear case for Lindsey without reading between the lines to an unwarranted extent." We are unable to

follow the Assistant Commissioner in his suggestion that it is necessary to read between the lines in order to find for Lindsey, since it seems clear to us that the testimony we have reviewed demonstrates beyond a doubt that Lindsey was the prior inventor. On the question of diligence, see Courson v. O'Connor, 38 App. D. C. 484; Id., 227 F. 890, 142 C. C. A. 414.

The decision is reversed, and priority awarded to the party Lindsey.

Reversed.