## CLEMENTS MFG. CO. et al. v. REGINA CORPORATION.

Circuit Court of Appeals, Second Circuit. July 15, 1929.

No. 320.

Charles Neave and Merrell E. Clark, both of New York City, for appellant.

Jeffery, Kimball & Eggleston, of New York City (Wallace R. Lane, of Chicago, Ill., Oscar W. Jeffery, of New York City, and Clarence J. Loftus, of Chicago, Ill., of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This is a suit for infringement of Clements' reissue patent No. 15,627. The claims relied upon are 1, 4, 6, 11, 12, 13, and 18. The invention relates to improvements in vacuum cleaners and has for one of its principal objects to provide means for connecting a suction hose directly with the inlet of the pumping chamber, so as to cause the connection between the normal floor nozzle and the inlet to the floor nozzle to be disconnected. Infringement is not disputed, and the only question raised on this appeal is of the validity of the patent. Judge Moscowitz, who presided at the trial, held the patent valid and the claims relied on infringed.

The Clements vacuum cleaner has the dual capacity of cleaning floors as it is moved over them and also of cleaning walls, draperies, and upholstery, and it is so constructed as to be easily converted from "on" to "off" floor service without the use of tools, by inexperienced persons. The patent has had a great commercial success and the only defense seriously raised to it is anticipation by the alleged prior use embodied in the so-called Domestic cleaner and by patent No. 1,102,130, to G. S. Bennett. Clements had prevailed and secured this patent over Kirby under a decision of the Circuit Court of Appeals for the Sixth Circuit in Clements v. Kirby, 274 F. 575. It is largely because of the Domestic prior use and the Bennett patent, which were not before that court, that the defendant argues that it is entitled to prevail here.

The specification of the patent in suit describes a flat cylindrical casing, which is called the pumping chamber, in which a fan is rotated by a motor attached to one side of the fan casing. Beyond the pumping chamber extends a discharge outlet tangentially arranged. Integral with the fan casing is the suction chamber communicating therewith through a port and provided with a screw-threaded passageway closed by a cap. The suction passage extends from the suction chamber next to the port into an elongated narrow suction nozzle adjacent to the floor which it is desired to clean. A dust-receiving bag is attached to one end of the tangential discharge way and at the other end is closed by a spring clip. Such are the main features of the device as arranged for cleaning floors.

When it is proposed to clean walls or draperies, the screw-threaded cap is removed and a hose tube is inserted in the screw-threaded passageway above mentioned and passed through and across the suction chamber into the port in the wall of the fan chamber. This tube cuts off the suction chamber, which is in use in floor cleaning, as well as the floor nozzle, so that the direct full pull of the fan may draw the dirt through the hose tube, its attached hose, and distant nozzle.

In Clements v. Kirby (C. C. A.) 274 F. 576, Judge Denison said: "The primary elements of such a structure are the pump or fan chamber and the suction chamber. The two are divided by a partition having an opening. The suction chamber is provided with a suitable intake nozzle, and the pump chamber has a tangential outlet to the dust receptacle. By the suction effect of the pump, the dust is pulled through the intake nozzle suction chamber and the partition opening into the pump chamber, and is therefrom blown out to the dust receptacle."

In describing the structures as related to cleaning draperies and upholstery, Judge Denison said Clements had improved the primary structure by making "an opening in the outer shell of the suction chamber, directly opposite and registering with the partition opening, and inserting through the outer shell opening and tightly into the partition opening an open-ended tube for a hose connection, whereby the suction pull was cut off entirely from the normal suction chamber, and this function transferred to the suction nozzle at the outer end of the hose. This improvement has demonstrated its utility and has been largely adopted."

Claim 4 may be regarded as typical of those relied on and reads as follows:

"4. A suction chamber having a fan chamber and a second chamber adjacent to said fan chamber and separated therefrom by a dividing wall provided with an opening, said second chamber being provided with an opening in the wall thereof opposite the opening in the dividing wall, a coupling member adapted to be secured in the opening in the second chamber and having a tubular extension adapted to extend across said second chamber in operative relation to the opening in said dividing wall, and a cover adapted to close the opening in said second chamber when said coupling member is removed."

It is seen from the foregoing that Clements combined a satisfactory machine by which dirt-laden air was sucked in a continuous flow through the nozzle, through the suction chamber, through a restricted opening in the fan chamber, into and completely through the fan chamber, and out tangentially into the dust collector and air releasor at the rear when used as a floor cleaner, and at the same time provided a hose converter which could be projected through an opening in the outer wall in the suction chamber, completely through the suction chamber, and which at the same time was so positioned and supported in relation to the outer and inner walls of the suction chamber as to prevent wabbling of the converter coupling or disrupting of its sealed relation with the inner partition. It was held in that position at all times when in use, so that the full suction power of the fan was utilized and all connection with the suction chamber and nozzle entirely and automatically cut off.

The Domestic cleaner is thought by defendant to defeat the Clements patent. The witness Quist, who was one of the inventors of this cleaner, said of this device:

"The cleaner is made with the suction chamber below—three bellows on the top. It has wheels in the back, with a crank shaft, and in the front is a nozzle, and between that nozzle and the chamber is a bag, and when you operate this machine, the bellows are actuated by the revolving of the wheels, creating a suction in the nozzle. When you want to use it for the hose, you take out the plug in the front, insert the tube, which fits into the hole, thus cutting off the suction from the nozzle. You move it back and forth, creating a suction then in the hose nozzle—it has to be two persons operating it when it is used with the hose and nozzle attachment, and by moving it backwards and forwards, you create a suction then in the hose."

It is true that in the Domestic cleaner the hose connection cut off the floor nozzle, but it did not, as in the Clements device cut off the suction chamber and itself extend to the pumping or fan chamber. It is contended to be sure that the space marked $A^4$, $A^8$, between $P$ and the outer wall in the Domestic cleaner is the suction chamber, as is the space marked by the similar numerals in the Clements device (Appendix A and Appendix B to appellants' brief). But this narrow orifice in the Domestic cleaner, however it may correspond in location with the suction chamber in the Clements device, is not the air space adjacent to the suction device, and the large space below the bellows in the Domestic cleaner was identified as the suction chamber by appellants' witnesses Quist and Blanch, as well as by appellee's expert Sessions.

In the Domestic cleaner the dust-laden air was drawn through the nozzle, turned abruptly at right angles through the dust bag, and from there passed through the suction chamber and nine inlet openings in the three bellows, whence it was discharged from openings in the top. If the hose connector had been brought up to the inlet openings in the pump the device would not have been a vacuum cleaner, for there would have been no dust bag to collect the dirt. Nor would the situation have been better if an electric-driven fan had been substituted in the Domestic cleaner for the bellows because the hose connection could not have been brought up to the eye of the fan without rendering inoperative the dust-collecting bag, which was located in the suction chamber below the suction apparatus in the Domestic cleaner.

We feel no doubt that the mode of operation of the Domestic cleaner which we have described was different from that of the Clements devise. The former had a short life and was superseded by the latter because Clements had invented something far better.

Clements provided the most direct possible connection of the hose connector to the fan, the shortest possible path, and one which had the least possible obstructions. It goes directly to the eye of the fan, where the suction is at a maximum, and automatically seals off the other cleaning connection—i. e., the floor nozzle, the suction passage, and the suction chamber $A^4$—so that no air can possibly enter the machine except through the hose cleaner. A small high-speed motor can develop sufficient power to operate one of these machines, for the reason that the air and dirt are moved the smallest possible distance through the cleaner, so that the work and friction, which is very great in air-handling machines, is, in the Clements device, relatively small. With long passages for the air and dirt to go through, the power required is considerably greater than it is in a machine where the passages are short. The absence of projections and enlarged passages, which form pockets for dirt and for eddy currents, and the short direct connection from the suction nozzle through the machine, makes it possible to use a very light motor. The entire machine is compact, simple in construction, and as light as possible.

The Domestic cleaner lacked many of the advantages of the Clements invention and differed radically from it. In the Domestic cleaner it was necessary to have a dust receptacle in *front* of the suction mechanism; otherwise, the dirt would have clogged the valves of the bellows and rendered the machine inoperative. In the Clements machine the air carries the dust at high velocity through the fan and tangentially out into a dust collector at the *rear* of the fan chamber.

The Domestic cleaner had a large 12-inch air space adjacent to the suction mechanism, calculated to collect dirt and to impede the direct suction of the bellows. It consequently did not, like Clements, possess a means for cutting off the entire suction chamber. The large expansion chamber of the Domestic machine necessarily decreased the velocity of the air. Moreover, in using that cleaner one person was required to move the machine up and down, so as to operate the bellows, and another to direct the nozzle of the hose when cleaning furniture or upholstery. This seriously increased the amount of labor and expense. Moreover, the Domestic mechanism did not afford continuity of operation, but involved a panting action, which started and stopped every time the cleaner was pushed to and fro. Furthermore, the dust bag ob-

structed and reduced the amount of air going through the machine, whereas in Clements' device, the dirt in the bag does not obstruct the intake of the fan at all. The Domestic cleaner had a large expansion chamber incumbered by the dust bag, whereas the Clements cleaner, instead of storing the collected dirt within the mechanism, blows it out. Clements thus provided a self-cleaning process, as well as the divers other advantages.

The trial judge very properly held that the two machines were built upon entirely different principles. It is somewhat significant that United States patent No. 1,022,499, to Osterholm, which was issued April 9, 1912, upon an application filed April 10, 1911, though copending with the application for the patent in suit, was not put into interference, while the Kirby-Clements contest was going on. The structure described in the Osterholm patent closely resembles the Domestic device. The Osterholm specification, at page 2, line 32, states that:

"The end of the tube is intended ordinarily to be closed by a cap *50* but if desired a pipe or tube *51* fitting frictionally therein can be introduced in place of the cap so as to cover the opening *49* and in that case the machine can be used with any of the ordinary nozzles for cleaning purposes in general."

The failure to cite a patent so close to the Domestic machine indicates that the Examiner regarded the Osterholm mechanism as too remote for consideration in the Kirby-Clements interference. This action greatly lessens the weight of appellant's contention that the Circuit Court of Appeals of the Sixth Circuit might have reached a different conclusion as to the validity of the Clements patent if it had had the Domestic Cleaner before it, and gives undiminished value to the opinion of Judge Denison in Clements v. Kirby, supra, sustaining the patent in suit.

United States patent No. 1,102,130, to Bennett, also relied on to defeat the Clements invention, is a mere paper patent, that never seems to have made a ripple on the commercial stream. The same situation obtained as to this patent as to the one to Osterholm. The application was copending in the Patent Office while the Kirby-Clements interference was going on, yet it never seems to have been regarded as of enough weight by the Examiner to be declared an interference.

The structure of Bennett is really very different from that of Clements. Bennett has no suction chamber resembling Clements. The narrow, tortuous passage leading to the floor nozzle can hardly be called a suction chamber. The only suction chamber of any account is the space adjacent to the fan chamber. It is not separated from the latter by a dividing wall, because it extends out of the fan chamber to the extent of its full width. There is, properly speaking, no dividing wall for the fan chamber. There is no cutting off of the suction chamber, for the expansion chamber in front of the fan chamber in the Bennett device always remains the same, whether the cleaning hose or the floor nozzle be in operation. The rotary valve of Bennett would be likely to work badly because of an accumulation of dirt and dust between the value and its bearings, and it certainly is not the method of cutting off the floor nozzle and suction chamber shown by Clements. The expansion chamber of Bennett would necessarily lower the velocity of the suction and form a place where dust would collect when the floor nozzle was in use.

The discharge opening is not, as in Clements' device, a tangential opening, but a direct axial opening, so that all dirt and air that are discharged by the fan have to turn an abrupt corner to get into the dust bag. Moreover, the passage from the floor nozzle orifice is crooked and obstructed by turns and corners, and the admission of the dirt into the suction chamber is through a narrow small passage which enters the suction chamber at right angles. Moreover, Bennett does not insert a tube member to cut off his floor nozzle and suction chamber, but shows a tube which is at all times a part of the connection between the nozzle and the pump chamber.

It would take a reconstruction of the Bennett machine to make a cleaner embodying the features of Clements' device. When the Bennett patent was cited by the Examiner against Clements' application for this reissue, the objection was disposed of upon the following argument:

"The construction shown by the Bennett patent 1,102,130, which has been cited by the Examiner, disclosed a vacuum cleaner equipped with a rotary tubular member which is intended to remain on the machine at all times; i. e., during both phases of its operation—a condition not true of the construction claimed where the converter is completely removed from the machine when it is used to clean floor coverings."

"In the Bennett construction the presence of the rotary tubular member in the passageway between the fan chamber and the suction nozzle while the machine is being used to clean floor coverings is very disadvantageous, since it forms an expansion chamber where dust and heavy particles of dirt improperly collect. * * *

"Furthermore in the Bennett construction, where it is contemplated that the rotary tubular member shall be in position in the machine at all times, the tubular member forms a part of the air passageway between the nozzle and the pump chamber during the floor cleaning phase of its operation. It will thus be seen that Bennett does not disclose a structure in which a converter member is inserted through the connection between the nozzle and the pump chamber since Bennett's tube is at all times a part of said connection.

"In other words, applicant has invented a converter member that is completely removed from the machine when it is not being used, but which is readily replaced when desired and thus, while securing all of the advantages offered by the Bennett construction, avoids all the serious defects inherent to it due to the fact that it remains part of the machine, necessarily and essentially so, during both phases of its operation."

Record, pp. 642–644.

It may well be doubted whether Bennett's device is practicable, and, in any event, it would require a reconstruction of it to bring the Clements mechanism within its scope. The patent shows practical defects, which would interfere with its operation, and, in order to treat it as having any bearing upon the Clements patent, defendant would have to invoke a considerable range of equivalents. This should not be permitted in the case of a mere paper patent as against an invention of proved merit and large commercial success.

The defendant's unquestioned infringement affords strong proof of utility and novelty in favor of the Clements patent. The prior art was open to the Regina Corporation. Yet it has not adopted the Domestic device or followed the structure of the Bennett patent. To paraphrase the language of the Supreme Court in Diamond Rubber Co. v. Consol. Rubber Tire Co., 220 U. S. at page 441, 31 S. Ct. 444, 55 L. Ed. 527, it gives the tribute of its praise to the prior art, the tribute of its imitation to the Clements invention. As Judge Denison said in Grever v. United States Hoffman Co. (C. C. A.) 202 F. at page 926: "Where the device has gone into very extensive public use, as here, and where the defendant has adopted the very construction involved * * * a doubtful question of patentable utility is foreclosed."

The Domestic cleaner was an awkward device, operated by means of a panting bellows with intermittent action. If the dust bag had been located in it in the place Clements shows in his patent, it would not work. Moreover, the Domestic cleaner was soon abandoned by those manufacturing it, and no one else cared to take it up. The Bennett patent embodied features, some of which appear to be impracticable, which are different from Clements' combination, and no one has ever attempted to put it into actual use. These devices, which have been abandoned or never used, while the Clements machine has been widely adopted, show the importance of the changes in former methods which Clements brought about.

The decree is affirmed, with costs.