**CLEMENTS MFG. CO. et al. v. EUREKA VACUUM CLEANER CO.**
**No. 209.**

Circuit Court of Appeals, Second Circuit.
May 7, 1934.

John F. Ryan, of New York City (Wallace R. Lane, of Chicago, Ill., Oscar W. Jeffery, of New York City, and Clarence J. Loftus and Harry S. Demaree, both of Chicago, Ill., of counsel), for complainants-appellants.

Merrell E. Clark, of New York City (William J. Belknap, Arthur C. Beaumont, and Laurence J. Whittemore, all of Detroit, Mich., of counsel), for defendant-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

We have heretofore held this patent valid and claims 1, 4, 6, 11, 12, 13, and 18 infringed in a suit by the complainants against The Regina Corporation (C. C. A.) 34 F.(2d) 931, 934.

The invention relates to improvements in vacuum cleaners, and has for one of its principal objects to provide means for connecting a suction hose directly with the inlet of the pumping chamber so as to cause the connection between the normal floor nozzle and the inlet to the floor nozzle to be disconnected. The Clements' device has the dual capacity of cleaning floors as it is moved over them and also of cleaning walls, draperies, and upholstery, and it is so constructed as to be easily converted from "on" to "off" floor service without the use of tools, by inexperienced persons. The cleaner has had great commercial success, and defendant's infringement furnishes substantial proof of the merit of the invention.

Claim 7, which is the one relied on in the present suit, reads as follows:

"7. In a cleaner, a casing having a fan chamber, and a suction chamber adjacent thereto and separated therefrom by a dividing wall provided with an opening, said suction chamber communicating with a suction mouth, the wall of said suction chamber having a removable portion, and a hose connection adapted to be secured in direct communicating relation to said opening, when said removable portion is displaced."

The Clements invention is a fixed floor nozzle with aligned openings in the front and rear walls to receive a converter tube and a cap for closing the opening in the front wall of the floor nozzle which is removable to admit the use of the converter tube. This cap is necessary in the design illustrated in the patent because the floor nozzle is fixed. The converter tube is inserted through the aligned opening in such fixed nozzle and acts both to shut off the floor nozzle and to provide a connection for the hose.

In the defendant's cleaners the floor nozzle is not in fixed position. Therefore a converter tube does not have to be inserted to shut it off. In the case of the Eureka Special, the floor nozzle is hinged to the lower part of the fan casing so that it may be folded underneath when the hose for off floor cleaning is in use. In defendant's Eureka Standard the nozzle is not hinged to the fan casing but locked into the casing at the lower part and is entirely removed when the hose is attached. The defendant has made much of the supposed attitude of the Circuit Court of Appeals of the Sixth Circuit in Clements v. Kirby, 274 F. 575, which was a suit under

Rev. St. § 4915 (see 35 USCA § 63), in which Clements was awarded priority of invention. This is because of the remark of Judge Denison, who wrote the opinion, to the effect that the presence of the inserted converter tube was an essential part of the invention. Clements v. Kirby (C. C. A.) 274 F. 575, 577. But the application on which the original patent, No. 1,392,624, was issued, contained claim 7 now in issue and also claim 4 under consideration in the suit by complainants against the Regina Corporation (C. C. A.) 34 F.(2d) 931, 934. Claim 4, which we dealt with in the Regina decision, calls for two openings, one in the dividing wall next the fan chamber, and the other in the outer wall opposite the first opening, through which a tubular extension for the wall cleaner may be inserted that will extend across the suction chamber to the opening in the dividing wall. We have no idea, however, that this meritorious invention was to be limited by these former decisions to the precise structure illustrated in the drawings and called for in claim 4. In our earlier decision the infringing device embodied the precise structure illustrated in the patent. We therefore had no reason to go beyond that structure in our discussion of the invention. In the specification, the patentee said that, while he showed in his "drawing an operative device, many changes might be made in size, shape and arrangement of the several parts without departing materially from the spirit of my invention." Consequently it is evident that the invention was not of a precise structure, but called for such equivalents as would embody the teachings of the specification and safeguard the invention.

The signal merit of the Clements patent is that the full suction power of the fan is directly utilized both in "on" and "off" floor operations, and the converter member for "off" floor work can be connected directly opposite the eye of the fan. In the defendant's machine a greater portion of the suction chamber is removed than in the particular form shown in the drawings of the Clements patent, but claim 7 is not limited to the particular amount removed so long as enough is removed to permit the converter or hose attachment "to be secured in direct communicating relation" to the opening in the dividing wall between the fan and suction chamber when the "removable portion is displaced." In both Clements' and defendant's device, the hose is so connected with the constricted opening in the partition directly opposite the eye of the fan that a full direct suction pull from the fan draws the dirt through the hose from the distant nozzle in the most direct path with the least possible obstruction and with an absence of projections and enlarged passages that would form pockets for air currents. The defendant accomplishes the same result by the same means which Clements employed, and, if the latter is entitled to a fair range of equivalents in order to preserve his invention, infringement is plain.

The means of converting the device shown in the Clements patent from a floor cleaner to a wall cleaner is to disconnect the outer wall of the suction chamber so that the hose tube may be placed in the opening in the inner wall of the suction chamber and the suction pull may operate directly on the nozzle. The removable portion of the wall of the suction chamber in case of the defendant's device comprises the entire outer wall instead of a part of the outer wall as in the Clements patent. The outer wall of defendant's cleaner is eliminated for the same purpose, as is A7 in Clements' device, in order that the hose tube may be "secured in seated relation in the inlet of the pumping chamber" (Clements' Patent, p. 1, line 103, et seq.). Either device satisfies the element of claim 7 which reads, "the wall of said suction chamber having a removable portion." The last element of the claim, namely, "a hose connection adapted to be secured in direct communicating relation to said opening when said removable portion is displaced," covers the constructions of both the Clements and defendant's cleaners, for the words refer to the seating of the hose tube in the constricted opening in the inner wall which takes place in both designs. The defendant's mechanism not only comes within the words of claim 7, but, in eliminating the outer wall of the suction chamber and seating the hose tube in the opening in the inner wall without passing the tube through the suction chamber, employs what are manifest equivalents for the two openings of Clements' drawings. It does "the same work in substantially the same way" as Clements. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 41, 42, 50 S. Ct. 9, 74 L. Ed. 147; Benjamin Electric Mfg. Co. v. Northwestern Electric Equip. Co. (C. C. A.) 251 F. 288.

Nevertheless, the defendant contends that, in view of the prior art, the patent in suit must be limited to an "off" floor type of vacuum cleaner that does not remove or destroy the floor nozzle assembly, but such a limitation would ignore the vital features of the invention.

704

The Eureka Model No. 1, the Arnold Richmond, the Hoover device (based on United States patent No. 1,021,731) and the Magic cleaner, all were in the prior art and all converted an "on floor" into a wall cleaner by placing a shoe or dustpan over the mouth of the floor nozzle and inserting a hose tube in the shoe. There was no partition and no constricted opening directly opposite the eye of the fan in any of those devices. All were portable cleaners, but in none was the suction concentrated at a small opening in the eye of the fan, and all have been superseded by convertible cleaners of the Clements type.

United States patent No. 945,343 to Pollard was likewise part of the prior art and is relied on by defendant to limit the claims of the Clements patent. Pollard discloses a portable vacuum cleaner without any suction chamber adapted for "on floor" work. This reference seems to have no bearing on Clements' patent for a combined "on floor" and "off floor" cleaner and indicates no means of conversion from one to the other. Indeed we can see no relevancy in the Pollard patent.

The United States patent No. 1,102,130 to Bennett shows a method of cutting off the floor nozzle by a rotary valve, but shows no partition between the suction chamber and floor chamber and no constricted opening in which a hose tube for wall cleaning may be seated in the eye of the fan. It is a mere paper patent which we have heretofore discussed and held of no weight as a reference. Clements Mfg. Co. v. Regina Corporation (C. C. A.) 34 F.(2d) 931, 934. It cannot be doubted that Clements was not the first to provide a converter for a portable hand cleaner. The Bennett patent shows a converter in such a cleaner, but discloses a different mechanism from that of Clements and one inferior to his.

The Figueras French patent, No. 365,572 (1906), is strongly relied on by the defendant, and the court below said that it taught "the removal of a floor nozzle and the connection of a hose to the eye of the fan for off the floor work." The Figueras device is not a vacuum cleaner designed to be moved back and forth over a floor during the floor-cleaning operation. The bell 14 may be unscrewed so as to fit a flexible tube at the opening 13. The rotating shaft 15, with the wide sweeper brushes 16, would apparently remain on the device and would seem to render it of doubtful operability as a wall cleaner. While Figueras' device contains certain features resembling those of the Clements device, reconstruction would be necessary to transform it into a convertible cleaner possessing the elements of the patent in suit. A foreign patent, in which features necessary to convert it from an "on floor" to an "off floor" cleaner are inadequately developed, cannot be regarded as a pertinent reference. The same thing may be said of United States patent No. 928,456 to Johnson. When the device is used for "on floor" work, the suction chamber seems to be left in the line of suction and not connected "directly to the eye of the fan." It is not shown that the device can be readily converted for "off floor" work, because when needed for this purpose the lower edge of the casing, i. e., the strip 32, has to be wholly or partly removed and a supplemental bottom 36 inserted in order to attach the hose tube. The Johnson patent really shows two cleaners, one for "on floor" and the other for "off floor" work. While Johnson is perhaps the closest reference to Clements that has been cited, we cannot regard it as a convertible vacuum cleaner of the sort described in the patent in suit.

We find nothing in the prior art which shows a readily convertible cleaner in which the suction is through a constricted opening in a dividing wall directly in the eye of the fan.

In the Regina Case, 34 F.(2d) 934, we held the patent in suit valid. There can be no doubt that the defendant was aware of Clements' invention before putting out its present devices founded on United States patent No. 1,182,595 to Stecker. Mr. Wardell, defendant's president, said at the trial: "I knew what the Clements' machine was and what it looked like and how it operated, both as to the converter member and as to the rest of the machine." The cleaners which defendant put out prior to its acquaintance with the Clements invention had not eliminated the floor nozzle and suction chamber from the line of suction for doing off floor work. The failure of earlier inventors to accomplish this, and the subsequent success of the Clements device strongly confirm our opinion that the patent is valid and the invention meritorious.

Defendant contends that the reissue patent was improperly granted and says that there was no inadvertence, accident, or mistake in the original specification whereby the patent was inoperative or invalid and that the only purpose of the reissue was to enlarge claims so as to embrace defendant's device. But claim 7 was in the original patent and the decision of the Patent Office to renew the patent must be regarded as final on this

point. Stimpson v. Westchester Railroad Co., 4 How. 380, 404, 11 L. Ed. 1020; Topliff v. Topliff, 145 U. S. 156, 170, 12 S. Ct. 825, 36 L. Ed. 658.

 It is also argued that the complainants are estopped by laches from commencing this suit. The court below held that there was no undue delay and that no estoppel had arisen, and this is borne out by the proof. The original patent was granted on October 4, 1921. The reissue was applied for April 30, 1923, and granted June 12, 1923. The suit against the Regina Corporation was begun in June, 1927, and concluded in 1929. The present suit was begun in 1930. Defendant was at all times aware of what complainants were doing and contributed to the defense of the Regina suit. Complainants were vigorously and continuously asserting their rights, and the infringers were at no time lulled into security. Such conduct affords no basis for an estoppel. Smith Hardware Co. v. S. H. Pomeroy Co. (C. C. A.) 299 F. 544, 548; Stearns-Roger Mfg. Co. v. Brown (C. C. A.) 114 F. 939.

The decree is reversed, and the cause remanded to the District Court, with directions to grant an interlocutory decree for the complainants with the usual injunction and reference.