**CLEMENTS MFG. CO. et al. v. EUREKA VACUUM CLEANER CO.**

No. 5233.

District Court, E. D. New York.

Sept. 6, 1932.

John F. Ryan, of New York City (Wallace R. Lane, of Chicago, Ill., Oscar W. Jeffery, of New York City, Clarence J. Loftus and Harry S. Demaree, both of Chicago, Ill., of counsel), for plaintiffs.

W. J. Belknap, of Detroit, Mich., and Merrell E. Clark, of New York City (L. J. Whittemore and A. C. Beaumont, both of Detroit, Mich., of counsel), for defendant.

CAMPBELL, District Judge.

This is an action based on the alleged infringement of reissue patent No. 15,627, to George Clements, assignor by direct and mesne assignments of one-half to Clements Manufacturing Company, and one-half to the Hoover Company, for vacuum cleaner, reissued June 12, 1923, on application filed April 30, 1923. Original patent No. 1,392,624, dated October 4, 1921, on application filed June 14, 1911.

The title of the plaintiffs is not questioned.

The defendant interposed the following defenses: Noninfringement, intervening rights as to claims added after reissue; invalidity as to the reissue claims, as there was no inadvertence, accident, or mistake, but merely a reissue to broaden claims; invalidity of the reissue patent in toto, as the original patent was not invalid or inoperative, and there was no inadvertence, accident, or mistake; estoppel under the original claims 6 and 7 on the ground of laches in asserting these claims against the defendant, and invalidity over the prior art.

The invention of the patent in suit relates to an improvement in convertible cleaners; the vacuum cleaner being changed from the floor type to the suction hose type by means of a tubular converter letter D.

The patentee in his specification of the reissue patent in suit, describing his invention, says: "My invention relates to improvements in vacuum cleaners, and has for one of its principal objects to provide means for connecting a suction hose directly with the inlet of the pumping chamber such connection causing the nozzle connection between the normal floor nozzle and the inlet to the pump chamber to be disconnected."

386

The vacuum cleaner of the patent in suit is of the portable type adapted as shown in Fig. 1 of the patent, to be used as a floor cleaner, or as shown in Fig. 2, to be used with a hose connection for the cleaning of draperies or the like.

As shown in Fig. 1, the nozzle proper $A^9$ is connected by a passage A, with the suction chamber $A^4$, and through a port $A^5$ to the fan chamber. In the outer wall of the suc-

tion chamber is a second port $A^6$, closed by cap $A^7$, when the machine is used as a floor cleaner.

When it is desired to use the cleaner with the suction hose, as shown in Fig. 2, the cap $A^7$ is removed and the convertible tube D is inserted through the aligned ports $A^6$ and $A^5$ and screwed tightly into place; the converter being provided with screw threads $D^1$ for engaging the threaded port $A^6$. The inner end

June 12, 1923.

G. CLEMENTS

VACUUM CLEANER

Original Filed June 14, 1911

Re. 15,627

Fig. 2.

Fig. 1.

D² of the converter tube extends through the passage A⁸ and, therefore, when in place, performs the function of shutting off the floor nozzle.

The outer end of this converter tube is provided with a portion for engaging a suction hose.

When engaged with the cleaner casing of the patent in suit, as shown in Fig. 2, the converter tube has a dual function, namely, it shuts off the floor nozzle, and it provides a connection between the fan casing and the suction hose.

The vacuum cleaner of the patent in suit is provided with a floor nozzle A⁹, which as expressed in the specifications is preferably integral with the fan casing, and is so shown in the drawings.

This suit is based on claims 6, 7, 12, and 13 of the patent in suit, which read as follows:

"6. A suction cleaner having a pump chamber and a second chamber separated therefrom by a dividing wall provided with an opening whereby the second chamber may communicate with the first mentioned chamber, the second chamber having an inlet mouth and an opening in operative relation to the opening in the dividing wall, and a coupling member adapted to be applied to the last mentioned opening and having an extension adapted to cut off communication between said first mentioned opening and said inlet mouth.

"7. In a cleaner, a casing having a fan chamber, and a suction chamber adjacent thereto and separated therefrom by a dividing wall provided with an opening, said suction chamber communicating with a suction mouth, the wall of said suction chamber having a removable portion, and a hose connection adapted to be secured in direct communicating relation to said opening when said removable portion is displaced."

"12. In a suction cleaner, a fan casing comprising end walls and having a peripheral wall, a fan in said casing, means for driving said fan, one of said end walls being provided with an approximately centrally located intake, an approximately peripheral fan discharge, a collecting nozzle secured to one of said end walls about said intake and adapted to discharge into said intake, the end wall provided with the fan intake being adapted to receive and seat therein in closing relation with the fan intake, a replaceable converter member for attachment of a secondary nozzle to the fan intake.

"13. The combination with a vacuum cleaner having a suction fan casing provided with an inlet, a fan in said casing, means for rotating the fan, a forwardly extending nozzle, mobile supports for the cleaner, of replaceable tubular means maintained in normal fixed closing relation to said fan casing inlet for connecting a cleaning tool to the fan inlet."

Claims 6 and 7 of the patent in suit with the same members are found in the original Clements patent, No. 1,392,624, and claims 12 and 13 were added and are first found in the reissue Clements patent in suit, No. 15,627.

The original Clements patent, No. 1,392,624, had a tempestuous passage through the Patent Office, and, after priority of invention had been accorded to one Kirby, and the patent issued to him after an appeal to the Supreme Court of the District of Columbia, an action under section 4915 of the Revised Statutes (35 USCA § 63) was brought by Clements in the District Court for the Eastern Division of the Northern District of Ohio, resulting in a decree in favor of the defendant, and an appeal to the Circuit Court of Appeals for the Sixth Circuit reversed that decree and ordered that the patent be awarded to George Clements, the complainant. Clements v. Kirby (C. C. A.) 274 F. 575.

Judge Denison, writing for the court in that case, at page 576 of 274 F., says (speaking of the structure of the original patent, which is also the structure of the patent in suit):

"The primary elements of such a structure are the pump or fan chamber and the suction chamber. The two are divided by a partition having an opening. The suction chamber is provided with a suitable intake nozzle, and the pump chamber has a tangential outlet to the dust receptacle. By the suction effect of the pump, the dust is pulled through the intake nozzle suction chamber and the partition opening into the pump chamber, and is therefrom blown out to the dust receptacle. Each of the contesting applicants improved this old structure by making an opening in the outer shell of the suction chamber, directly opposite and registering with the partition opening, and inserting through the outer shell opening and tightly into the partition opening an open-ended tube for a hose connection, whereby the suction pull was cut off entirely from the normal suction chamber, and this function transferred to the suction nozzle at the outer end of the hose. This improvement has demon-

strated its utility and has been largely adopted.

"It is quite obvious that the possible presence of the inserted tube is an essential part of this invention; for, without it, the invention did not exist."

That opinion was cited with approval in Clements Mfg. Co. v. Regina Corporation, 34 F.(2d) 931, by the Circuit Court of Appeals of this circuit, in which, at page 932 of 34 F.(2d), Circuit Judge Augustus N. Hand, writing for the court says (in speaking of the converter member): "A hose converter which could be projected through an opening in the outer wall in the suction chamber, completely through the suction chamber, and which at the same time was so positioned and supported in relation to the outer and inner walls of the suction chamber as to prevent wobbling of the converter coupling or disrupting of its sealed relation with the inner partition. It was held in that position at all times when in use, so that the full suction power of the fan was utilized and all connection with the suction chamber and nozzle entirely and automatically cut off."

Plaintiffs now contend that the pith of the Clements' invention is the provision of the dividing wall with its constricted opening, which communicates directly with the suction nozzle for "on" floor cleaning and to which is attached the hose connection for "off" floor cleaning, both communicating directly with the eye of the fan. This contention is not sustained.

I accept the statements defining the invention made by the Circuit Court of Appeals of the Sixth Circuit, which gave Clements the patent, and of the Circuit Court of Appeals of the Second Circuit, in the Regina Case.

In addition thereto, the constricted opening which plaintiffs now contend is the pith of the invention is a feature not claimed as an invention in the reissue patent in suit, nor described in the specification, as the specification in no way refers to the opening $A^5$ as a constricted opening, nor is there any novel function assigned to this opening.

The prior art shows a large number of structures with the opening leading to the fan casing smaller than the diameter of the fan casing, and novelty was not in the patent in suit and could not be predicated upon this feature, and the argument by plaintiffs, based on its so-called pith of invention, and the cases cited, are not in point.

For the prior art last referred to, see the Eureka No. 1, Arnold-Richman cleaner,

Johnson patent No. 928,456; Russell and Carson patent No. 993,202; Chapman patent No. 1,183,952; French patent to Figueras, No. 365,572.

Also Pollard patent No. 945,343, which, while it does not disclose a floor nozzle, does disclose a structure which, with relation to the features in controversy in this case, is the same as the structure of the Eureka vacuum cleaners, when these structures are used for wall or hose cleaning.

Two types or models of defendant's vacuum cleaners are charged to infringe, viz., Eureka Special and Eureka Standard.

The Eureka Special, as shown in Fig. 3 of Plaintiffs' Exhibit 6H, its principal constituent elements being identified by letters, as follows: A is the motor casing, B is the fan casing, and C is the floor nozzle, which is hinged at D to the lower part of the fan casing. This hinge connection permits the nozzle to be folded underneath the fan casing. The floor nozzle is held in operative position to be used for floor cleaning by a latch E.

The front wall of the fan casing is provided with an opening F, of sufficient size to permit the fan to be inserted into the fan casing therethrough, and arranged over this opening is a plate G carrying a forwardly projecting nipple H, to which a hose may be attached when the nozzle is removed.

When the vacuum cleaner is used for cleaning floors, the floor nozzle is attached in place as shown in Fig. 1. When the vacuum cleaner is to be used as a hose or wall cleaner, the latch E is unfastened and the nozzle removed by swinging it underneath the cleaner as shown in Fig. 2. This permits the hose to be connected to the projecting nipple.

A patent was granted on this structure to Stecker, No. 1,182,595, on May 9, 1916, which patent is owned by the defendant.

The Eureka Standard differs from the Special as far as any features here in controversy are concerned, merely in that the fan casing is provided with wheels in the Standard, while in the Special the wheels are on the nozzle, and, further, the nozzle is not hinged to the fan casing, but is completely removed from the fan casing, when the hose is to be attached.

Both structures are charged to infringe, and no different question is presented in connection with the Clements patent in suit, whether the nozzle is removed and swinging out of the way underneath the casing, or whether the nozzle is removed by complete detachment from the fan casing.

Comparing the Eureka structure charged to infringe, in which the floor nozzle is completely removed, and then the hose attached, with the patent in suit, there will not be found in said Eureka structure mechanically, either structurally or functionally, the equivalents of the combination floor nozzle and suction chamber, integral with and therefore remaining in fixed position with respect to the fan casing at all times; the removable cap in the outer wall of the suction chamber in direct alignment with the fan casing inlet; the dual function replaceable tubular converter with its two forms; and means in the opening in the suction chamber wall for securing either the cap or the converter member.

As I have hereinbefore pointed out, the Circuit Court of Appeals, both of the Sixth Circuit and of the Second Circuit, say that the dual function of the converter is an essential part of the invention, the Circuit Court of Appeals of the Sixth Circuit, in Clements

A. J. STECKER.
VACUUM CLEANER.
APPLICATION FILED JULY 22, 1913.

1,182,595.

Patented May 9, 1916.

v. Kirby, supra, going so far as to say (page 577 of 274 F.) : "It is quite obvious that the possible presence of the inserted tube is an essential part of this invention; for, without it, the invention did not exist."

And also said (page 578 of 274 F.): "The parties both regarded the use of the substitutable hose connection, passing through the suction chamber and cutting it off, as the invention in controversy."

And the Circuit Court of Appeals in the Second Circuit, in Clements v. Regina, supra, at page 932 of 34 F.(2d), also says (in emphasizing the tubular converter) : "When it is proposed to clean walls or draperies, the screw-threaded cap is removed and a hose tube is inserted in the screw-threaded passageway above mentioned and passed through and across the suction chamber into the port in the wall of the fan chamber. This tube cuts off the suction chamber, which is in use in floor cleaning, as well as the floor nozzle, so that the direct full pull of the fan may draw the dirt through the hose tube, its attached hose, and distant nozzle."

It thus appears to me that the essence of the invention of the Clements reissue patent in suit lies in the particular construction of the converter tube that is inserted through the aligned openings in the walls of the floor nozzle, and, by the act of insertion, shuts off the floor nozzle and connects the hose to the fan casing.

This seems to have been clearly the understanding of the patentee, who in the specification of the original Clements patent, No. 1,392,624, defined his invention as follows: "My invention relates to improvements in vacuum cleaners and has for one of its principal objects to provide means for simultaneously disconnecting the suction nozzle and connecting a suction hose with the pumping chamber." (Page 1, lines 8–13, inclusive.)

And also as hereinbefore pointed out the patentee in the reissue patent defined his invention as follows: "My invention relates to improvements in vacuum cleaners, and has for one of its principal objects to provide means for connecting a suction hose directly with the inlet of the pumping chamber such connection causing the nozzle connection between the normal floor nozzle and the inlet to the pump chamber to be disconnected." (Page 1, lines 9–16, inclusive.)

Even in Clements' attempt in the reissue patent to broaden the invention as much as possible, we find that he requires the connection for the hose to have the function of "causing" the nozzle connection between the floor nozzle and the inlet to the pump chamber to be disconnected.

In defendant's structure the means for connecting a suction hose directly to the inlet of the fan casing is the projecting nipple on the fan casing and the hose fitting on the end of the hose. This nipple does not at any time act to disconnect the nozzle passage, nor does the hose fitting at any time act to disconnect the nozzle passage.

There is no dual function converter in defendant's construction, nor any mechanical equivalent; on the contrary, it is the removal of the nozzle that performs the function of "causing the nozzle connection between the normal floor nozzle and the inlet to the pump chamber to be disconnected."

Before proceeding to examine the prior art with reference to the patent in suit, and the construction of the claims in suit, we will consider plaintiffs' contention that the defendant is estopped to attack the validity of the reissue patent in suit by reason of its participation in the defense of the Regina suit. The burden of proof on this issue is on the plaintiff. Elliott Co. v. Roto Co. (C. C. A.) 242 F. 941.

On all the testimony, the most that is shown is that the defendant contributed to the defense fund of the defendant in the Regina suit, as it is clearly shown that defendant did not participate in the control of the defense, and took no part in the defense in choosing counsel, or the conducting of the case other than making its contribution as aforesaid.

This is not sufficient to sustain plaintiffs' contention. Rumford Chemical Works v. Hygienic Chemical Co., 215 U. S. 156, 30 S. Ct. 45, 54 L. Ed. 137; Lathrop v. Rice & Adams Corporation (D. C.) 21 F.(2d) 124, affirmed (C. C. A.) 24 F.(2d) 1021, affirmed 278 U. S. 509, 49 S. Ct. 220, 73 L. Ed. 480; General Electric Co. v. Morgan-Gardner Electric Co. (C. C. A.) 168 F. 52.

Plaintiffs cite Reo Motor Car Co. v. Gear Grinding Mach. Co. (C. C. A.) 42 F.(2d) 965; Vapor Car Heating Co. v. Gold Car Heating & Lighting Co. (C. C. A.) 7 F.(2d) 284, cert. denied, 268 U. S. 705, 45 S. Ct. 639, 69 L. Ed. 1167; Beyer Co. v. Fleischmann Co. (C. C. A.) 15 F.(2d) 465; Dicks Press Guard Mfg. Co. v. Bowen (D. C.) 229 F. 193; Murphy Wall Bed Co. v. Pacific Spring Bed Co. (D. C.) 295 F. 745; N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co. (C. C. A.) 25 F.(2d) 659; Warford Corporation v. Bryan

Screw Mach. Products Co. (C. C. A.) 44 F. (2d) 713; but they do not seem to me to be in point, as defendant was not a member of any organization which selected counsel or paid all of the expenses of the litigation on behalf of the member sued; on the contrary, the Regina Company selected its own counsel and in all respects controlled the defense, the defendant doing nothing but contributing money.

■ Even if it should be found that the defendant was a party privy to the Regina suit, it is not estopped to deny infringement. The structure of defendant is entirely different from the Regina structure both in construction and in operation. The arrangement and operation of the converter in the Regina Case was substantially a copy of the structure of the Clements patent, and infringement was admitted if the patent was valid.

Even the Regina Company would not be estopped from disputing infringement of a vacuum cleaner substantially different from that held to infringe in the Regina Case, and the defendant in this case is not estopped from questioning infringement. Cromwell v. County of Sac, 94 U. S. 351, 353, 24 L. Ed. 195; Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435; Block v. Commissioners, 99 U. S. 686, 693, 25 L. Ed. 491; Wilson's Executor v. Deen, 121 U. S. 525, 532, 7 S. Ct. 1004, 30 L. Ed. 980; Bissell v. Spring Valley Township, 124 U. S. 225, 231, 8. S. Ct. 495, 31 L. Ed. 411; Washington, A. & G. Steam Packet Company v. Sickles, 5 Wall. (72 U. S.) 580, 18 L. Ed. 550; Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204; Imperial Mach. & F. Corporation v. American Mach. Co. (D. C.) 276 F. 436, 441; D'Arcy v. Staples & Hanford Co. (C. C. A.) 161 F. 733, 738; T. L. Smith Co. v. Cement Tile Machinery Co. (C. C. A.) 257 F. 423, 424.

■ Even if the defendant was a party privy to the Regina suit, which it was not, it is not estopped from using the prior art to narrow or limit the claims of the patent in suit. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316.

Clements was not the first to provide a converter for a portable hand cleaner, as the prior art shows that portable vacuum cleaners for household use were old in the art, and these were upon the market prior to his invention; the Eureka No. 1, which was put out in 1910; the Arnold, afterwards known as the Richmond, which was on the market in 1909; the Hoover, which was on the market long prior to Clements; and the Magic, one of which cleaners was purchased in June, 1910, all of which had converters.

■ Clements did not invent a small cleaner and no novelty is imported into the cleaner of the patent in suit by its size.

There is no limitation in the patent in suit as to any particular size, nor is mere size dealt with in any of the patents of the prior art.

We will now consider the prior art patents introduced in evidence.

Patent No. 930,125, issued to Charles F. Barrett, for portable vacuum cleaner, granted August 3, 1909, discloses a portable cleaner with a floor nozzle 6, carried by an extension 5, of the suction pipe, which extension 5 is detachable and may be unshipped so as to permit the floor nozzle to be removed and an ordinary flexible hose to be secured to the pipe 4.

Patent No. 933,526, issued to Jacob H. Brown, assignor by mesne assignments of one-half to Emma Krusi, for renovator, granted September 7, 1909, discloses a portable cleaner provided with a floor nozzle 21, which is detachably connected by clamp 23 to pipe 24 leading to the inlet of the pump. To clean parts elevated above the floor a nozzle 21$^a$, in all respects like the nozzle 21, is provided, and, instead of connecting it directly with the inlet pipe 24, it is joined thereto through the intermediary of a flexible pipe or hose.

Patent No. 956,452, issued to John S. Thurman, for hand vacuum cleaner, granted April 26, 1910, discloses a portable vacuum cleaner provided with a floor nozzle which is removable, and for which may be substituted a hose, as the patentee says in his specification: "The suction-head is removed when occasion arises to employ the apparatus for cleaning furniture, curtains, and other articles in the room. When that is done, a screw-nipple 14 is clamped to the receptacle, said nipple being likewise provided with a flange 10′ having forks 11′ between which the bolts b are received, the nuts n clamping said screw-nipple to the receptacle. To the nipple any convenient length of vacuum hose (not shown) may be attached, and the free end of the hose be provided with a suction-head or tool available for the cleaning of curtains, furniture, upholstery and the like."

Patent No. 980, 944, issued to Tracy Barbour Hatch and Edwin Walter Goeser, for suction cleaner, granted January 10, 1911, discloses a portable vacuum cleaner with the

392

floor nozzle E removably connected to the casing by the union nipple 82, screwed into the neck and a union nut 83, which floor nozzle may be removed and a hose nozzle attached for cleaning furniture, closets, and the like.

These patents disclose portable vacuum cleaners with floor nozzles that are removable to permit a hose to be substituted therefor, but do not disclose the hose connected to the eye of the fan.

Patent No. 928,456, issued to Joseph Oliver Johnson, for sweeping machine, granted July 20, 1909, discloses a portable vacuum cleaner of the sweeper type, adapted both for floor work and for off the floor work. As shown in Fig. 5, when the drawing brushes 13 are detached from the lower end of the shaft 12 and a supplemental bottom 36 is engaged with the lower side of the fan casing and perfectly secured thereto, the inner end of tube 40, the outer end of which is connected to a brush casing 41, is connected to the outwardly projecting fan 39 through a centrally disposed aperture in the bottom 36, and the hose leads directly to the eye of the fan.

Patent No. 1,183,952, issued to Alonzo E. Chapman, for pneumatic sweeper and renovator, granted May 23, 1916, on an application filed October 31, 1905, discloses a portable cleaner having a floor cleaner which is detachable to permit a hose to be substituted therefor, the floor nozzle and the suction hose

J. O. JOHNSON.
SWEEPING MACHINE.
APPLICATION FILED JULY 9, 1908.

928,456.

Patented July 20, 1909.

Fig. 5.

being alternately connected to the tube 20, which as shown in Fig. 2 leads to the center of the fan.

French patent No. 365,572, issued to Estanislao Figueras, for domestic cleaning apparatus, published September 11, 1906, discloses a small portable cleaner with a floor nozzle 14, which for off the floor work is removed from the extension 13, and a flexible hose is positioned on the extension 13, which is coaxial with the fan, and the air from the hose will be conducted directly to the eye of the fan.

Plaintiffs attack the patent as inoperative and not clearly described and leaving much to be inferred, but I do not agree with plaintiffs; on the contrary, it seems to me clearly to teach the removal of a floor nozzle and the connection of a hose to the eye of the fan for off the floor work.

Patent No. 993,202, issued to John H. Russell and Albert A. Carson, assignors to E. J. Ramey, for vacuum cleaner for carpets and the like, granted May 23, 1911, upon an application filed July 6, 1909, discloses a vacuum cleaner having a removable floor nozzle D, for which may be substituted for off floor work a hose, the connection for the floor nozzle and also for the hose being directly to the eye of the fan.

This patent shows hand-operated gearing for driving the fan, but that is immaterial, as the connection would operate the same with any driving means, and the use of electric motors for operation of the fan was well known to the art.

Patent No. 1,102,130, issued to George S. Bennett, for vacuum cleaner, granted June 30, 1914, on an application filed May 22, 1909, discloses a portable vacuum cleaner which does not require extended consideration, but it does show a converter member which is designed to cut off the passage to the floor nozzle and provide a connection for the hose to the eye of the fan.

Patent No. 945,343, issued to Charles R. Pollard, assignor to David W. Williams, for vacuum cleaning apparatus, granted January 4, 1910, discloses a portable vacuum cleaner having a horizontal motor and a fan casing, with the fan operating about a horizontal shaft, the fan casing having a tangential discharge.

The suction hose is attached to a nipple 14, which projects forwardly from a plate that is detachable to permit the fan to be inserted within the fan casing.

This patent does not disclose a construction having a floor nozzle, but does disclose a construction that, so far as the controverted features here are concerned, is substantially the same as defendant's structures of which complaint is made herein, when they have the suction hose attached for off the floor work.

My examination of the prior art convinces me that small portable vacuum cleaners were old in the art before Clements, as were converters for converting a floor cleaner into a hose or wall cleaner, the connecting of the hose to the eye of the fan, to remove the floor nozzle and substitute therefor a hose connection to the eye of the fan, and that the provision of a tubular converter that acted to cut off the floor nozzle passage and provide a connection for the hose direct to the eye of the fan was shown in Bennett patent No. 1,102,-130.

The prior art may conveniently be divided into three classes: (1) Cleaner with the fixed floor nozzle and a shoe converter; (2) cleaner in which the floor nozzle is likewise left in place and a converter member is adapted to be used to convert it to suction hose use; (3) cleaner in which the floor nozzle is completely removed or put aside and a hose is put in position for off the floor use.

The reissue patent in suit is in the second classification, while the defendant's structure is in the third.

From this examination it seems to me to be apparent that the essence of the invention of the patent in suit lies in the particular construction of the converter tube that is inserted through aligned openings in the wall of the suction chambers, and by the act of insertion shuts off the floor nozzle and connects the hose to the fan casing, and that the construction of the claims of the patent in suit, on which this suit is based, must be limited accordingly.

Plaintiffs contend that Clements should not be so limited. I have found that he should be. But, even if it be held that he should not be so limited, Clements converts from the floor type to the off floor type, through the medium of the aligned apertures, the dual function converter tube and the removable type, and the claims include some or all of these instrumentalities; and to find infringement there must be found in the defendant's structure the instrumentality or instrumentalities called for, or the mechanical equivalents thereof, and they are not found in defendant's structure.

I do not believe that the interpretation I have placed on the claims in suit make them

the same as claim 4, but, if it does, the doctrine of differentiation cannot be allowed to overcome the rule of construction, that the patentee's claims can be no broader than his actual invention.

The defendant started with the No. 1 Eureka, its 1910 construction, shown in the Stecker design patent, No. 40,982, of November 8, 1910. In 1915 it changed to the Eureka No. 6 construction, shown in the Stecker patent, No. 1,182,595, of May 9, 1916, which is substantially the same as the construction charged to infringe.

In making this change, the defendant did not follow the teachings of the patent in suit with reference to its particular type of tubular converter, but, on the contrary, followed the teaching of Stecker patent No. 1,182,595, which disclosed an improvement on the prior art of removable nozzle construction.

■ Claims 6, 7, 12, and 13 of the patent in suit do not read upon defendant's structure, and, even if they did, there would be no infringement, because, reading and construing the claims of the patent as we must in connection with its drawings and specification, it cannot include the defendant's structure, which is substantially different from the patent in suit in construction, mode of operation, principle, and inventive concept. Outlook Envelope Co. v. General Paper Goods Mfg. Co. (C. C. A.) 239 F. 877, 879; Mossberg v. Nutter (C. C. A.) 135 F. 95, 99; Edison v. American Mutoscope & Biograph Co. (C. C. A.) 151 F. 767, 773, 774.

The defendant's structure does not have identity of means and identity of function with the structure of the patent in suit, and the result accomplished is not reached by substantially the same or similar means.

■ There is not found in the defendant's alleged infringing structure a converter nor any mechanical equivalent of the dual function converter tube of the patent in suit, and therefore it cannot infringe. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 569, 18 S. Ct. 707, 723, 42 L. Ed. 1136; Edwards Mfg. Co. v. National Fireworks Dist. Co. (C. C. A.) 272 F. 23, 26; Linde Air Products Co. v. Morse Dry Dock & Repair Co. (C. C. A.) 246 F. 834, 838; Grubman Engineering & Mfg. Co. v. Goldberger (C. C. A.) 47 F. (2d) 151, 152.

Each of the claims calls for the converter member and is limited thereby, the said member being described in various ways.

"Claim 6. * * * And a coupling member adapted to be applied to the last mentioned opening and having an extension adapted to cut off communication between said first mentioned opening and said inlet mouth."

"Claim 7. * * * And a hose connection adapted to be secured in direct communicating relation to said opening when said removable portion is displaced."

"Claim 12. * * * A replaceable converter member for attachment of a secondary nozzle to the fan intake."

"Claim 13. * * * Of replaceable tubular means maintained in normal fixed closing relation to said fan casing inlet for connecting a cleaning tool to the fan inlet."

Claims 6 and 7 are claims of the original Clements patent, No. 1,392,624, and clearly are not infringed, and do not even as a matter of words read upon the defendant's structure, and, if they did, the patent in suit would be invalid in view of the prior art.

Defendant's structure, in addition to having no converter member, has in the suction chamber no "opening in operative relation to the opening in the dividing wall," as called for in claim 6, and the wall of the suction chamber of the defendant's structure has no "removable portion," as called for in claim 7.

The whole suction chamber and nozzle is removed in defendant's structure when it is desired to use it for off the floor work.

Claims 12 and 13 were first made in the reissue patent in suit, the application for which was filed April 30, 1923, about eight years after defendant had changed to the structure which is alleged to infringe.

While couched in more elastic language than claims 6 and 7, the said claims 12 and 13 do not read upon the defendant's structure. As I have before said, the defendant's structure has no "replaceable converter member" as called for in claim 12, and no "replaceable tubular means maintained in normal fixed closing relation to said fan casing inlet for connecting a cleaning tool to the fan inlet," as called for in claim 13.

■ The Clements converter is not interchangeable in the Eureka construction. This is important as showing no infringement. Fay v. Mason et al. (C. C. A.) 127 F. 325; Diamond Match Co. v. Sun Match Corporation (C. C. A.) 16 F. (2d) 1, 3.

If the words of these claims are stretched to cover the defendant's structure, they apply equally to the prior art structures of Chapman, Figueras, Johnson, and others. With the nozzle and suction chamber of defend-

ant's structure removed, the hose is attached for off the floor work, as in the Pollard patent, No. 945,343.

The nipple in defendant's cleaner forms no part of the suction chamber.

It is not the removable portion of the suction chamber that in the Clements structure is the cap $A^7$ that fits in the opening in the nozzle.

The removable nozzle and suction chamber of the defendant's structure is not the equivalent of the cap $A^7$ of Clements.

The nipple to which the hose is attached in defendant's structure functions the same as the nipple to which the hose is attached in Pollard or Figueras or Chapman.

The contention of the plaintiffs that defendant did not deny infringement is without merit, and the record shows that the advances to induce the taking of a license by defendant had been made on more than one occasion by plaintiffs' representatives, and was considered by defendant only on the ground that it would be for the protection of the industry as a whole.

Plaintiffs did not give any notice to defendant of infringement of the original patent, particularly claims 6 and 7, but waited until the claims had been broadened in the reissue patent, which was applied for. long after the defendant's structure had been placed on the market.

The defendant does not infringe.

If, however, there is any question of infringement, even merely of words, of claims 12 and 13, the plaintiffs cannot maintain this suit under said claims.

The Eureka model 6, illustrated in Stecker patent No. 1,182,595, granted May 9, 1916, upon an application filed on July 22, 1915, as far as any issue is involved under the reissue patent in suit, is the same as the defendant's alleged infringing structure.

Large quantities of model 6 and later models have been marketed by the defendant in competition with plaintiffs' structures, large sums have been spent in advertising and expansion by it since 1920 and before 1931, and it has grown to be one of the largest manufacturers of vacuum cleaners in the United States.

Defendant was never notified of or charged with infringement of the original Clements patent, although it was one of plaintiffs' largest competitors.

The defendant's construction in all respects, as far as any features here in controversy are concerned, has been on the market since 1915, and long antedates claims 12 and 13 of the reissue patent in suit, which were first made about eight years after the defendant's construction had been on the market, and about seven years after the patent under which defendant was manufacturing had been granted.

That patent will expire May 9, 1933, and plaintiffs' reissue patent will expire in 1938, and plaintiffs did not bring suit until October, 1930.

The facts in this case show that the defendant has acquired such intervening rights that plaintiffs are prevented from maintaining any action against the defendant under claims 12 and 13. Moto Meter Gauge & Equipment Corporation v. E. A. Laboratories (D. C.) 55 F.(2d) 936, 941; Autopiano Co. v. American Player Action Co. (C. C. A.) 222 F. 276; Matthias Christman v. New York Air Brake Company (D. C. N. D. N. Y.) 1 F. Supp. 211; Ashley v. Samuel C. Tatum Co. (D. C.) 240 F. 979.

The fact that at the time the application for the reissue patent in suit was filed this defendant had been in open competition with the plaintiffs for eight years, on the same construction which is charged to infringe, and, since the Stecker patent No. 1,182,595 under which plaintiffs manufactured had been issued seven years before the granting of the reissue patent, or the filing of the application therefor which brought in claims 12 and 13, the said claims were brought in too late. Webster Electric Co. v. Splitdorf Electric Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792, 793; Westinghouse E. & Mfg. Co. v. Jeffrey-DeWitt Insulator Co. (C. C. A.) 22 F.(2d) 277; Dwight & Lloyd Sintering Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823.

In Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053, the Supreme Court said (page 563 of 97 U. S., 24 L. Ed. 1053): "Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."

There elapsed about nine years from the time of the granting of the original patent to Clements and about seven years from the time of granting the reissue patent to Clements until the commencement of this suit, but I do not believe that the plaintiffs

were estopped from bringing this suit on claims 6 and 7 because of the delay in commencing this suit during the eighteen months between the granting of the original and reissue patents.

Clements had secured the patent after a long litigation, and undoubtedly was concerned about the restrictions of his patent and the attempt to broaden the same, and eighteen months was a comparatively short time.

Since the granting of the reissue patent, the plaintiffs were engaged in litigation to establish the validity of the reissue patent, and have from time to time been engaged in conferences with the representative of the defendant, with reference to the defendant taking a license.

While on all the evidence it may fairly be inferred that plaintiffs would not have brought an action against this defendant had the reissue patent not been granted, that inference does not furnish sufficient grounds for holding that the plaintiffs were estopped from bringing this action against the defendant, on claims 6 and 7.

The plaintiffs were not estopped from bringing this suit on claims 6 and 7 of the patent in suit.

The defendant does not infringe any of the claims 6, 7, 12, or 13 of the patent in suit.

Even if it could be held that the defendant infringed claims 12 and 13 of the patent in suit, the plaintiffs could not maintain this suit because of the intervening rights acquired by the defendant.

A decree may be entered in favor of the defendant against the plaintiffs dismissing the bill of complaint, with costs.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by the rules of this court.

Settle decree on notice.